**IN THE COURT OF APPEALS OF IOWA**

No. 14-1503
Filed November 13, 2014

**IN THE INTEREST OF D.L.-S.,**
**Minor Child,**

**B.S., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

The father appeals the termination of his parental rights to his daughter, D.L.-S. **AFFIRMED.**

Amy R. Dollash of the State Public Defender's Office, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Lance Heeren, Assistant County Attorney, for appellee State.

Julie Trachta, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

The father appeals the termination of his parental rights to his daughter, D.L.-S. He asserts the State did not prove his rights should be terminated pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2013), and he should be granted an additional three to six months to work towards reunification. We conclude the State proved by clear and convincing evidence the father's rights should be terminated under paragraph (h). Furthermore, granting the father additional time to work toward reunification is not in D.L.-S.'s best interest, given that she is an infant and is in need of permanency, in addition to the fact the father has shown only minimal progress throughout the past year. Consequently, we affirm the order of the juvenile court terminating the father's parental rights.

D.L.-S., born August 2013, first came to the attention of the Department of Human Services (DHS) a month after she was born due to domestic violence between the mother and father in the home. Prior to D.L.-S.'s birth, it was reported the father punched the mother in the stomach. Then, on three separate occasions within a two week period, authorities were contacted because of various domestic violence issues. D.L.-S. was removed from the home on September 20, 2013, and was adjudicated a child in need of assistance on October 1. D.L.-S. was placed in foster care, where she remained at the time of the termination hearing.[1] She has never been returned to either parent's care.

The mother and father have a fraught relationship. In addition to the domestic violence issues, there have been several no contact orders put in place throughout the pendency of the proceeding, all of which have either been

---

[1] The foster home has adopted D.L.-S.'s half-sister—to whom the mother's parental rights were terminated in 2011—and the juvenile court noted the sisters are bonded.

violated or voluntarily revoked. There is conflicting evidence regarding whether they were together at the time of the termination hearing—the mother informed the DHS workers they were together, and they had in fact married, but the father testified he was no longer with the mother and had no intention of resuming their relationship. However, the mother is pregnant and contends D.L.-S.'s father is also the father of the unborn child, though D.L.-S's father testified he was not sure he was the father of the unborn child. Additionally, DHS workers consistently noted that, instead of focusing on D.L.-S. during the supervised visits and family team meetings, the parents would focus on each other and issues in their relationship. All parties agree the relationship between the mother and father is toxic.[2]

The father was granted fully supervised visits two to three times each week, and his attendance was fairly consistent. In June 2014, the DHS workers determined he had made enough progress to begin semi-supervised visits. However, prior to those visits being initiated, the father brought a seventeen-year-old woman with him to one of the visits. When informed this was not pre-approved or appropriate behavior, he stated he was pressured into bringing her, though at the termination hearing the DHS worker speculated the father brought this other woman to make the mother jealous. Because of this infraction, in addition to the father's unwillingness to recognize how he was at fault and the possible impact his actions had on D.L.-S., he never progressed to anything beyond fully supervised visits. However, the father has progressed in his ability

---

[2] The mother and father were on a nationally syndicated television show called The Test. At the termination hearing, the DHS worker testified she observed the father attempting to choke the mother, though the parents indicated this was scripted.

to parent D.L.-S. He is now able to take care of the infant's immediate needs, such as changing diapers, and has demonstrated a commitment to learning how to parent by reading and taking notes on various parenting books. The DHS workers did note, though, that when D.L.-S. becomes fussy, the father does not act appropriately and hands her to another person or puts her in her crib while he leaves for his own "time-out."

The father also has a long history of substance abuse and criminal activity. He has been using marijuana and alcohol since he was seventeen, and he has reported he has never been sober for more than three months. At the termination hearing, the DHS worker testified that, during one of the supervised visits in January 2014, she smelled marijuana and believed the father was under the influence while interacting with D.L.-S. Through he successfully completed outpatient substance abuse treatment at the Area Substance Abuse Council, he tested positive for THC during treatment.[3] He last tested positive on January 21, 2014, and testified he has remained sober since that time. The mother has stated she has given the father money to purchase marijuana on two separate occasions since the removal of D.L.-S.

With regard to the father's criminal history, he was granted a deferred judgment on a charge of burglary in the third degree on June 3, 2013. However, on January 23, 2014, he was confined to the Lary Nelson Center due to his failure to follow the terms and conditions of his probation. He violated these terms by providing positive drug screens, missing urinalysis tests, receiving an

---

[3] The father testified he remained sober throughout treatment; however, the juvenile court noted the father had not abstained from substance abuse during treatment, basing this assessment in part on its finding the father was not credible.

obstruction of justice charge for interfering with a 911 call from the mother,[4] and failing to get approval from his probation officer to move back in with the mother. At the time of the termination hearing the father was still residing in the center, though the juvenile court noted the father would likely move in with his mother following his release in the middle of July 2014.[5] He also spent some time in jail for failing to follow the rules at the Lary Nelson Center. To his credit, he is currently employed at a bread distribution company, working forty-five to sixty hours per week and earning $10 per hour.

The following services were offered to the father during the pendency of this proceeding: post-removal conferences; family safety, risk, and permanency services; supervision and services through DHS as well as the Department of Corrections; paternity testing; individual counseling; family team meetings; domestic violence counseling; substance abuse evaluation and treatment; drug testing; mental health evaluations; and supervised visitation.

On March 10, 2014, the State petitioned to terminate the parental rights of the mother and father. The mother consented to termination but the father contested the State's petition. A termination hearing was held on June 30, 2014, and on August 20, 2014, the juvenile court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(a) and the

---

[4] This charge occurred in November 2013, though no conviction ever resulted.
[5] In his appellate brief the father states he was released on August 21, 2014, and he is currently living with his mother; however, these are untested assertions outside of the record, which we may not consider. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

father's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*).[6] The father appeals.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

Given that the record demonstrates D.L.-S. cannot be returned to the father's care, the State proved by clear and convincing evidence the father's rights should be terminated pursuant to paragraph (h). As the juvenile court noted:

> It is hoped that at some future date [the father] will gain the maturity, insight and judgment that will allow him to safely parent a child, but today is not that day. He verbalizes his acceptance of the responsibility for his actions, but his actions speak louder than those words. To return a child [D.L.-S.'s] age that cannot self-protect to the father's home would subject her to multiple adjudicatory harms including lack of adequate supervision, physical and emotional harm, placing her at imminent risk of harm to her health and safety.

Though given access to many resources, the father has not demonstrated an ability to parent D.L.-S. safely. In determining the future actions of the parent, his past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). While he has made some improvement in how he responds to D.L.-S.'s needs, such as

---

[6] To terminate parental rights under paragraph (h), the State must prove by clear and convincing evidence the child is three years of age or younger, has been adjudicated CINA, removed from the home for six of the last twelve months, and cannot be returned home. To terminate under paragraph (*l*), the State must show the child has been adjudicated CINA, the parent has an ongoing substance abuse problem, and the child cannot be returned to the parent within a reasonable time.

being able to feed her or change her diaper, he still has not demonstrated a clear commitment to parenting D.L.-S. full-time. It is therefore evident D.L.-S. cannot be returned to his care.

Additionally, we do not agree with the father's assertion that granting him an additional three to six months to work towards reunification is in D.L.-S.'s best interest. As the DHS worker testified:

> [M]y professional opinion is [the father] cannot have safe reunification with [D.L.-S.] in the next six months, I question whether he would be able to after that as well. [The father] just has not demonstrated any consistency in this case. He's demonstrated a lot of lip service and insight into what he needs to do, but the only time that [the father] has demonstrated change is when he has the Lary Nelson Center giving him that highly-structured supervision.

The record supports the DHS worker's testimony. The father has been given a year to work towards reunification, but he has failed to progress to even semi-supervised visits. We agree that, based on the various DHS reports as well as the testimony presented at the termination hearing, there is a bond between the father and D.L.-S. However, "[w]e have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). There is no evidence the father would make any more use of an additional few months than he has made of the past year, and it is imperative that D.L.-S. obtain stability and permanency in her life, particularly given her young age. Consequently, we conclude termination of the father's parental rights is in D.L.-S.'s best interest, and we affirm the order of the juvenile court.

**AFFIRMED.**