# IN THE COURT OF APPEALS OF IOWA

No. 20-1194
Filed November 30, 2020

**IN THE INTEREST OF C.B.,**
**Minor Child,**

**G.B., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Ida County, Mary L. Timko, Associate Juvenile Judge.

The father appeals the termination of his parental rights. **AFFIRMED.**

Harold K. Widdison, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Lesley D. Rynell of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The father appeals the termination of his parental rights to C.B., born in 2016.[1] He argues the juvenile court erred in allowing the State to amend its petition to terminate parental rights and insert Iowa Code section 232.116(1)(a) (2020) as a ground for termination.[2] He also claims he did not consent to termination voluntarily and intelligently. Additionally, he claims the statutory grounds for termination under Iowa Code section 232.116(1)(e) and (h) were not established by clear and convincing evidence. The father next argues for an additional six months to work toward reunification and claims termination of his parental rights is not in the best interest of C.B.

**Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Human Services (DHS) in August 2016, when C.B. tested positive for amphetamines at birth. Finding C.B. to be at risk, the juvenile court ordered immediate removal and transferred temporary care and control of the child to DHS. After determining C.B. to be a child in need of assistance (CINA), DHS initiated several services to the family from August 2016 to January 2019. The case was closed in January 2019, but five child-abuse assessments followed. These new reports alleged the father, the paternal grandmother, and the father's paramour were using

---

[1] C.B.'s biological mother is deceased.
[2] Iowa Code section 232.116(1)(a) allows the court to terminate parental rights when"[t]he parents voluntarily and intelligently consent to the termination of parental rights and the parent-child relationship and for good cause desire the termination." The record shows the State orally moved to amend the termination-of-parental-rights petition on August 25, the day of the termination hearing, to reflect the consent ground under section 232.116(1)(a).

methamphetamine in the family home. The father was also continuing to associate with methamphetamine users, according to two of his older children.

Again, the State filed a CINA petition on August 14, 2019. Before the hearing on the CINA petition, C.B. was removed from the father's custody and placed in foster care on August 27, under a petition and order for emergency removal. At the hearing on the CINA petition, the court found C.B. was a CINA pursuant to Iowa Code section 232.2(6)(c)(2). In its order, the court questioned the father about allowing his paramour to essentially move into the family home when he knew she struggled with methamphetamine addiction and was actively using. The court said it was

> fully aware that [the father] has engaged in the use of illegal substances. His child, [C.B.], tested positive at birth for methamphetamine and later tested positive for illegal drugs as well. There has been no real explanation as to how that could have happened. [The father] takes no responsibility for either of these positive tests. He was evasive enough to shave [C.B.'s] head this time after these allegations arose. [He] does not own up to any use of illegal drugs at this time and will not take a drug test.

The court ordered the father to participate in random drug and alcohol testing provided by DHS and authorized DHS to initiate services to work toward a goal of reunification.

At the next hearing in November, the court found that the father attended visits with C.B., although he was consistently late. He submitted to some drug testing, but the court had concerns that he was bleaching his hair to avoid hair-stat testing. To his credit, the father had maintained employment and provided a negative urinalysis on November 12. Overall, "the court [was] extremely concerned about [the father's] honesty with service providers and the court. As a

result, the court cannot ensure the safety of [C.B.] in [the father's] care until such time as he demonstrates full cooperation."

Unfortunately, the father regressed by the time of the next hearing in February. He had lost his job "because he could not focus on it." And maintaining stable employment was one of the requirements for reunification. The court found, "There is no indication that [the father] has participated in substance abuse treatment or mental health treatment." In fact, he participated in a hair-stat test that was positive for methamphetamine in December 2019. While the father showed interest in parent-child interaction therapy and scheduled an intake session, he did not show up on the scheduled date. Overall, it appeared the father was not committed to taking advantage of the services provided to work toward reunification. Another hearing was scheduled for May 26.

At the May hearing, the court found that the father had yet to make meaningful progress toward reunification. "Throughout the entirety of the underlying case, [the father] has failed to show good effort toward completing a case permanency plan or creating a safe home environment for [C.B.]." Ultimately, the court found "that the recommendation for the filing of a termination of parental rights petition is appropriate in this matter."

The termination hearing was held on August 25, 2020. At the time of the hearing, it had been a full year since C.B. was removed from the father's custody. The father started making some meaningful progress in June 2020; he was regularly attending substance-abuse treatment and had reached out to Plains Area Mental Health to start mental-health services. That said, the court felt that it was too little, too late. He still had not obtained employment, and the court was very

concerned that his paramour, whose drug use prompted CINA proceedings, was still living in the family home.

On the day of the termination hearing, it was learned that the father signed a consent form to the termination of his parental rights. The State moved to amend the termination petition to conform to the proof and add voluntary consent as a ground for termination under Iowa Code section 232.116(1)(a). The court explained the consequences of consenting to termination, and the father indicated he understood. In the termination order the juvenile court summarized the father's feelings about the consent: "When asked why he signed it, he stated that he was going to lose anyway. He went on to indicate that [DHS] and all the parties in court had been lying and he was 'through with it'. He feels he has been railroaded from the very beginning." Two days after the hearing, the court issued an order terminating the father's parental rights to C.B. He now appeals.

**Standard of Review**

"We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "The primary interest in termination proceedings is the best interests of the child." *Id.* "We will uphold an order terminating parental rights where there is clear and convincing evidence of grounds for termination . . . ." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "Clear and convincing evidence means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *C.B.*, 611 N.W.2d at 492.

**Consent to Termination**

The father first claims that the court erred in allowing the State to amend the termination petition on the day of the hearing. He argues the motion to amend

did not comply with Iowa Rule of Civil Procedure 1.402(4). We find no merit in his claim. The rule specifically provides, "Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires." Iowa R. Civ. P. 1.402(4). Here, the father signed a consent to termination form the day of the termination hearing. In open court, the State asked for leave to orally amend the petition to terminate "to add the consent ground . . . 232.116(1)(a)." Through his attorney, the father waived time and notice to proceed on the amended petition. Therefore, we find no error in the court granting leave to amend the petition for termination.

In a closely related claim, the father asserts for the first time on appeal that the court erred in accepting his consent to termination.[3] *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."); *In re A.C.-B.*, No. 16-0106, 2016 WL 1366865, at *2 (Iowa Ct. App. Apr. 6, 2016) (noting the father "raises the issue of lack of voluntary and intelligent consent for the first time on appeal. This is insufficient"). But, even if the issue had been preserved, his arguments would fail in any event. On appeal, he argues it was not given voluntarily and intelligently because "it is pretty obvious . . . it was signed under duress after [he] had been lied to, coerced and told 'he was going to lose anyway.'"

---

[3] For the first time on appeal, the father also raised the ineffective representation he received from his attorney. Because the father only addresses details from outside the record, we decline to address the issue. *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992) ("We limit our review to the record made in the termination proceeding involving [the child in interest].").

"The general scheme of section 232.116(1)(a) indicates it is the legislature's intention that prior to a termination hearing, a parent or parents can sign a written release agreeing to the termination which can be binding if it is in the best interest of the child." *In re T.N.M.*, 524 N.W.2d 574, 576 (Iowa Ct. App. 1995). "Iowa Code chapter 232 provides no specific guidance on the requirements for a release that will subsequently support termination of parental rights under section 232.116(1)(a) other than it be intelligent and voluntary." *Id.* The question we must answer is "whether [consent] was voluntarily and intelligently made when given and [whether] there was good cause for [the parent] to desire the termination." *Id.* at 577. During the termination hearing, the court walked through the consent with the father:

> Q. All right. And, [father], what do you believe is the consequence of signing the consent? A. That I lose [C.B.].
> Q. That you will lose the ability to have—make decisions in his life? Do you understand that? A: Okay.
> Q. Can I ask what brought you to this decision? A. Because I'm going to lose anyways. These women don't stop. They lie like no other. I'm through with it.
> Q. So you don't want to proceed? A. (Shook head negatively.)
> Q. No? Okay. Do you think that by signing that it is in [C.B.'s] best interest? A. I could hope and pray. . . . I've been railroaded from the beginning by these women.
> Q. Okay. When did you come to this decision? A. Today.
> Q. Today? Okay. So up until today you were going through the proceedings? A. I just want to get it over with. . . . I'm done with them being in my life. I want them out. I can't handle it no more. They've cost me everything—my kids, my job. I just want them out.

The father then asked if he could leave, and he was dismissed by the court. The attorney and guardian ad litem for the child stated,

> Your honor, I believe it to be in [C.B.'s] best interest to have his parental rights terminated with regard to his father. The case has been staffed with adoptions. He is adoptable. He is integrated into

his current foster home that, if rights are terminated, they are willing to permanently integrate him into that home.

This case is similar to *In re C.J.*, in which a father consented to termination and then argued on appeal that his consent was given under duress because of the stress of being in prison and reduced contact with his children. No. 03-1595, 2003 WL 22701266, at *1 (Iowa Ct. App. Nov. 17, 2003). In *C.J.*, the court affirmed the termination, finding that the father signed the consent form and affirmed his consent at the termination hearing. 2003 WL 22701266, at *1. "He was advised by his attorney regarding consenting to termination. We find there is clear and convincing evidence in the record to show the father's consent . . . was intelligent and voluntary." *Id.*

Based on the record before us, we find that the father voluntarily and intelligently consented to termination of his parental rights. He was represented by counsel and signed a written consent to the termination, acknowledging that his consent was intelligently and voluntarily given. The court established that the father understood the consequences of consenting to termination. Although he now claims on appeal that he consented under duress and was "railroaded" and lied to, we find no evidence supporting his contentions in the record. We recognize that the decision to consent to termination of parental rights is a heavy one, and the father's hesitancy and dissatisfaction is understandable. But that does not mean he can now change his mind or that his consent was not voluntarily and intelligently made.

We also find that his consent was given for good cause. C.B. had been out of his father's custody for a full year at the time of the termination hearing and was

integrated into a home with foster parents willing to adopt him. The father was unemployed and had not shown he could provide adequate care and support to C.B. In sum, we find no error in the court's acceptance of the father's consent to termination.

**Error Preservation and the Other Issues Presented**

"It is a fundamental doctrine of appellate review that issues must ordinarily be raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "[T]he general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

The State argues that the father failed to preserve error on all the claims he asserts in this appeal because he consented to termination. Having already found his consent to termination was given voluntarily, intelligently, and for good cause, we agree that error was not preserved on the father's other claims. As established above, the father was present at the termination hearing and consented to termination. He did not ask, as he does now, for six more months to work toward reunification with C.B. He presented no evidence and made no arguments as to why termination of his parental rights is not in the best interest of C.B. Because we affirm the termination under section 232.116(1)(a), we need not address the father's claim that grounds for termination under section 232.116(1)(e) and (h) were not proven. *See Id.* at 774 ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). While we sympathize with the

father and understand that he regrets his decision to consent to termination, he cannot raise a host of claims on appeal that he never made to the juvenile court.

In conclusion, we find that the father consented to termination voluntarily and intelligently. He did not preserve error on his other claims. And we find that clear and convincing evidence supported the grounds for termination.

**AFFIRMED.**