# IN THE COURT OF APPEALS OF IOWA

No. 22-1171
Filed November 17, 2022

**IN THE INTEREST OF S.C., F.C., M.C., A.C., and M.C.,**
**Minor Children,**

**M.C., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Buena Vista County, Andrew Smith, District Associate Judge.

 A mother appeals an order terminating her parental rights to five children. **AFFIRMED.**

 Jessica R. Noll (until withdrawal), Sioux City, and Tisha Halverson of Klay, Veldhuizen, Bindner, DeJong & Halverson, PLC, Paullina, for appellant mother.

 Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

 Justin F. Reininger of Boerner & Goldsmith Law Frim, P.C., Ida Grove, attorney for S.C. and guardian ad litem for all minor children.

 Lisa Mazurek of Miller, Miller, Miller, P.C., Cherokee, attorney for F.C., M.C., A.C., and M.C.

 Considered by Bower, C.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

Maria, a mother of five, appeals the juvenile court's order terminating her parental rights. She alleges the State failed to prove that the children could not be returned to her custody. Maria also contends termination was not in the children's best interests, citing their strong connection with her. At a minimum, she asks for more time to work toward reunification.

After our independent review, we reach the same conclusion as the district court.[1] Maria's recent use of methamphetamine and her lack of candor about the lapse rules out a safe return of the children to her custody. And the children's need for permanency after thirty months of removal overrides the detriment of severing the legal bond with their mother. We thus affirm the termination order.

## I. Facts and Prior Proceedings

The children are M.A.C. (born in 2007), A.G.C. (born in 2012), M.B.C. (born in 2015), F.B.C. (born in 2017), and S.C.C. (born in 2020). The Iowa Department of Human Services became involved with their family in 2019, based on reports that Maria was using methamphetamine. The department also had concerns about lack of supervision and poor school attendance. When Maria tested positive for methamphetamine in January 2020, the department removed the four older children from her home. They have not returned to her custody since then.

Maria admitted using methamphetamine again in February 2020, and entered in-patient treatment that April, discharging successfully in June. Pregnant

---

[1] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's fact findings but are not required to adopt them. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.*

with her fifth child, Maria moved in with her mother. Given Maria's progress, the department moved the children from foster care to their grandmother's home. When the children were in her mother's home, Maria participated in their care. S.C.C. was born in December 2020.

But the relative placement proved precarious. The department received reports that the children "were often left to fend for themselves" without the grandmother or other adults providing meals. A child abuse assessment found that the baby, S.C.C., and then five-year-old M.B.C. were left in the care of their eight-year-old brother, A.G.C., for "an unknown amount of time." Given the supervision concerns at the grandmother's house, the department moved the children back to foster care.[2]

To her credit, Maria took the opportunity to reengage in services, attending family treatment court and substance-abuse therapy. But while a permanency hearing was pending in the spring of 2021, a service provider dropped in on Maria and found her to be "very intoxicated." Maria also admitted using methamphetamine again. Even after that setback, Maria was consistent in her visitation with the children and continued to access services for her substance abuse and mental health.

---

[2] The juvenile court reported that, after this move, the department required Maria's visits to be supervised because she "did not follow the requirement that she only speak English to the children and was disrespectful and demanding to the foster parents." Maria is a native Spanish speaker. The foster mother said that her own Spanish skills were "not very good." We do not condone any disrespect to the foster parents. But we question the requirement that a parent whose second language is English not be allowed to speak to their children in their first language.

Then Maria experienced more trauma. In January 2022, she suffered an injury to her arm when S.C.C.'s father, Saul, cut her with a knife. He was charged with domestic abuse assault. Maria testified at a combined permanency-termination hearing that she intended to end her relationship with Saul, noting that she handled the situation better than she would have in the past.[3] Indeed, her counselor reported that Maria was making less impulsive decisions and using better coping skills. In a February 2022 order, the juvenile court terminated the parental rights of the children's four fathers.[4] But the court found that the evidence supported giving Maria six more months to work toward reunification. The court set strict expectations for Maria, among them that she "refrain from use of all mood-altering substances, including, but not limited to, alcohol, illegal drugs, or the abuse of prescription medication."

Unfortunately, she did not meet that expectation. In late February or early March, she accepted an invitation to smoke methamphetamine with a former drug associate. She testified she turned him down at first, saying "I'm doing good in life right now." But when he showed her "a pipe of meth" it was a "new trigger" for her and she "jumped in the car with that person." She recalled using the drug for hours at his place. She did not report the lapse to service providers.[5] The department

---

[3] The court credited her testimony, finding that it could not "countenance a decision that Maria's visitation should be curtailed based in any part on an incident of domestic violence wherein she was the victim, especially when it appears she took all appropriate steps in response to violence by Saul."

[4] The fathers are not parties to this appeal.

[5] She testified that she was not forthcoming about the methamphetamine use because she was "very scared" of the consequences.

found out when she tested positive in late March.[6]  Maria missed a visit with her children after the positive drug test; she later explained that she had "just shut down" emotionally.  During that shutdown, she failed to ensure that A.G.C. took his prescription medication.  And as the juvenile court explained in its termination ruling, even before the positive drug test, Maria had been lax about supervising the children during semi-supervised visits at the grandmother's house.

Cutting short Maria's six-month extension for reunification, the court scheduled a permanency review and termination-of-parental-rights hearing in June 2022.  The court heard testimony from Maria, the department case manager, a foster parent, and the service provider.  At the close of the trial, the State and the children's guardian ad litem (GAL) recommended termination of parental rights. The attorney for the four older children told the court that fourteen-year-old M.A.C. opposed termination of his mother's parental rights and that the siblings wished to remain together.  Noting the foster family was caring for all the siblings, the children's attorney asked the court to "give Maria the balance of the six months previously ordered."  Maria's counsel seconded that recommendation and urged the court to order the department to expand her visitation.

In its written ruling, the juvenile court sided with the State and GAL, finding termination was proper under Iowa Code sections 232.116(1)(f) (2022) (for the older children) and (h) (as to S.C.C.).  The court rejected Maria's request to delay permanency, believing she had been "provided an extreme measure of patience." Maria now appeals the termination ruling.

---

[6] Maria acknowledged at the termination hearing that she knew she was pregnant with her sixth child when she smoked the methamphetamine.

## II.    Analysis

## A.  Statutory Grounds

Maria contends the State did not prove by clear and convincing evidence that the children could not be safely returned to her care.  That is the fourth element of both paragraph (f) and paragraph (h) of section 232.116(1).[7]  She emphasizes that she had housing, employment, and transportation and was engaged in substance-abuse and mental-health therapy.  What Maria doesn't mention is her recent methamphetamine binge and her decision to not come clean with providers.  She also doesn't confront the lingering supervision issues.  As the GAL argued: "[Maria] has received services through the case. . . .  [T]he danger of substance abuse still exists, the danger of leaving the children unsupervised still exists. . . .

---

[7] Iowa Code section 232.116(1)(f) requires proof of these elements:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code section 232.116(1)(h) requires proof of these elements:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

We are over two years into this. The same issues exist from the beginning exist now."

We are persuaded by the GAL's argument. No doubt, Maria worked on her mental health and addiction during the case. And she gained some stability. But her forward progress was not enough to ensure that all five children could be safely returned to her custody at the time of the termination hearing.[8] *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (noting "present time" means date of termination hearing). In fact, at the hearing, her attorney did not argue she was ready for their return. Rather, her attorney asked for more time to "work towards reunification." On this record, termination was proper under paragraphs (f) and (h).

## B. Best Interests and Permissive Exceptions

Maria next argues termination was not in the children's best interests. She contends all the children enjoy a "significant bond" with her. But, in particular, she highlights the wishes of her oldest son, M.A.C., who opposed termination and was reluctant to discuss adoption with the foster parents. Maria's argument is an

---

[8] Our case law offers two interpretations for finding that children "cannot be returned" to parental custody as provided in section 232.102, which discusses transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child." Many cases cite *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992) which quotes section 232.102(4)(a)(2)—then numbered section 232.102(5)(b)—for the proposition that custody should be transferred only if the court finds "the child cannot be protected from some harm which would justify adjudication of the child as a child in need of assistance and an adequate placement is available." *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016). But more recent cases observe that our supreme court often describes that element simply as the inability to "safely return" children to a parent's custody. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either articulation, we find the State met its burden of proof.

amalgam of the best interests analysis in Iowa Code section 232.116(2) and the permissive factors in section 232.116(3).

Turning first to bests interests, we give primary attention to the children's safety; to the best placement for furthering their long-term nurturing and growth; and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). We also consider whether they are integrated into a family foster home, how long they have been in that placement, and the desirability of maintaining that environment. *Id.* § 232.116(2)(b)(1). Plus, we weigh the reasonable preferences of children who have the capacity to express their wishes. *Id.* § 232.116(2)(b)(2).

These children have been in foster care for two years. The department case manager testified that they looked to the foster parents for guidance and to have their needs met. And "overall they appear to be happy." Even M.A.C. had settled into a routine, going out for sports and learning to drive. Given Maria's tenuous sobriety and persistent problems with supervision of the children, we find that termination of her parental rights serves the children's bests interests.

As for permissive factors, Maria focuses on M.A.C.'s opposition to termination and the closeness of her relationship with the children. *See id.* § 232.116(3)(b), (c). On paragraph (b), we hold two thoughts at the same time. One, because M.A.C. has the capacity to offer a meaningful viewpoint, we cannot ignore his preference. Two, what a child wants is not always in their best interests. *In re A.R.,* 932 N.W.2d 588, 592 (Iowa Ct. App. 2019).[9] M.A.C.'s attorney reported

---

[9] When weighing children's preferences, we consider (1) their age and education level; (2) the strength of their preference; (3) their intellectual and emotional make-

that the oldest child has "never vacillated" that he doesn't want his mother's parental rights to be terminated. But M.A.C. also insists all the siblings want to stay together. Because the foster parents are willing to adopt all five children, the best option to maintain that sibling bond may be termination of Maria's parental rights to M.A.C., along with his brothers and sisters.[10] And as a bottom line, termination will provide M.A.C. the prospect of a more certain and stable environment. On paragraph (c), we don't discount Maria's love for her children. The service provider testified that their bond was "getting better" but was "still a struggle." On this record, the danger posed by Maria's instability outweighs the disadvantage imposed on the children by the termination. *See In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021).

### C. Delayed Permanency

Finally, Maria contends the juvenile court erred in not granting her more time to work toward reunification under Iowa Code section 232.104(2)(b). We reject her contention and adopt the juvenile court's reasoning:

> The circumstances at this point are no better than they were at [the time of the permanency hearing], and are arguably worse. Unlike at the time of the permanency hearing, Maria has a recent use of controlled substance. The Court is not concerned about that use, as much as about Maria's lack of honesty regarding that use. Even an admission at the time she was asked to submit to the test which yielded a positive result would have improved the current circumstances. It appears, though, that Maria simply crossed her

---

up; (4) their relationship with family members; (5) the reason for their decision; (6) the advisability of honoring the children's desire; and (7) the court's recognition it is not aware of all the factors influencing the children's view. *A.R.*, 932 N.W.2d at 592

[10] The record is unclear whether M.A.C. would be open to being adopted after the termination of his mother's parental rights.

fingers and hoped her use would not be revealed, even though she had every reason to believe it would.

The evidence does not show it is likely that the need for the removal of the children from the mother's custody would no longer exist at the end of another six months.

*In re L.H.*, 949 N.W.2d 268, 272 (Iowa Ct. App. 2020).

**AFFIRMED.**