In the Interest of M.M., A Child,

J.M., Mother, Resister,

State of Iowa and M.M., Applicants.

No. 91–342.

Supreme Court of Iowa.

April 15, 1992.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Special Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for applicant State.

Mary Lynn Neuhaus, Dubuque, guardian ad litem for the child, applicant.

Stuart G. Hoover of Bauer & Heckmann, P.C., Dubuque, for resister mother.

Paul J. Kaufman, Dubuque, for the father.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

In this termination proceeding, the juvenile court terminated the parent-child relationship between a child and her natural parents. Both parents appealed.

We originally transferred this case to the court of appeals. The court of appeals affirmed termination of the father's rights but reversed termination of the mother's rights for lack of clear and convincing evidence. The father has not sought further review. However, the State and the child's guardian ad litem did file an application for further review regarding the mother. We granted this application.

We now vacate that portion of the court of appeals' decision regarding the mother's parental rights and affirm the decree of the juvenile court.

I. *Background Facts.*

Tom and Jeannie—the parents involved in these proceedings—were married in 1985. Their daughter Melissa, who is the subject of these proceedings, was born in April 1988.

There are four other children in this family: Dan (twelve years old), Tina (eleven years old), Joshua (six years old), and Tommy (five years old). Dan, Tina, and Joshua are Jeannie's natural children but not Tom's. Besides Melissa, Tommy is the natural child of Tom and Jeannie.

The couple's marriage was turbulent. Tom was an alcoholic who inflicted physical and verbal abuse on Jeannie when he was under the influence.

The Iowa department of human services became involved with Melissa in January 1989 when the child was about nine months old. Jeannie had become concerned about Melissa's low weight and took her to the University of Iowa Hospitals and Clinics for diagnostic evaluation. The hospital doctors diagnosed Melissa as a "failure to thrive baby." She was about two months behind in development.

Melissa was placed in foster care on January 19, 1989. In March 1989—by stipulation of all the parties—Melissa was adjudicated a child in need of assistance. *See* Iowa Code § 232.2(6)(g) (1987).

The juvenile court entered a dispositional order on April 6, placing Melissa's care, custody, and control with the department. The order also approved a case plan developed by the department. The plan required the following of the parents: (1) supervised visitation with Melissa; (2) family counseling by Hillcrest Family Services; (3) homemaker visits by the Visiting Nurses Association; (4) supervised monthly contacts by the area education agency; (5) attending the nurturing program at the county mental health center as soon as it was available; and (6) looking for a larger residence and keeping their home safe and clean.

The case plan imposed additional requirements on Tom: (1) abstaining from alcohol; (2) attending substance abuse counseling; (3) refraining from physical abuse of Jeannie and the children; and (4) looking for a job.

## II. *Background Proceedings.*

In November 1990 the State filed a petition to terminate the parent-child relationship between Melissa and both parents. *See* Iowa Code § 232.116(1)(g) (Supp.1989). The State alleged there was clear and convincing evidence that Melissa could not be returned to her parents as provided in Iowa Code section 232.102. After a hearing, the juvenile court did terminate both parents' rights under Iowa Code section 232.2(6)(b), (c), and (n).

Both parents appealed. Each challenged the sufficiency of the evidence to support termination. We transferred the case to the court of appeals which set oral arguments for September 5, 1991.

On August 30, 1991, the juvenile court had apparently held a dispositional hearing regarding the other four children. At the time of this hearing, these four children were out of the home and in foster care. Jeannie asked the court of appeals to supplement the record as to Melissa with the evidence taken at the August 30 hearing. She also wanted to include the juvenile court order entered following the hearing. The court of appeals granted Jeannie's request. The court also granted a similar request by the State to supplement the record concerning certain events that occurred in October 1991.

The court of appeals then affirmed termination of Tom's parental rights but reversed termination of Jeannie's rights. The court concluded there was insufficient evidence to terminate Jeannie's rights.

In their application for further review, the State and Melissa's guardian ad litem complain about the court of appeals' ruling allowing Jeannie to supplement the record. They also challenge the court of appeals' conclusion that there was insufficient evidence to terminate Jeannie's parental rights.

## III. *Scope of Review.*

■ Principles of appellate review of termination proceedings are several and well-known. Preeminent is the fact that we review such proceedings de novo. Iowa R.App.P. 4; *In re J.L.P.*, 449 N.W.2d 349, 351 (Iowa 1989). Accordingly, "we review the facts as well as the law and adjudicate rights anew." *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). While we give weight to the factual determinations of the juvenile court—especially when considering the credibility of witnesses—we are not bound by them. *In re A.M.S.*, 419 N.W.2d 723, 726 (Iowa 1988).

■ Our overriding concern in parent-child termination cases is the best interests of the child. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The child's best interests are two-fold: (1) long-range interests and (2) immediate interests. In determining the child's long-range interests, we must consider what the future holds for the child if returned to the parent. *In re L.L.*, 459 N.W.2d at 493–94. Evidence of the parent's past performance is relevant on this issue because it may show the quality of future care the parent is capable of providing. *Id.* at 494.

There is an inherent tension in parent-child termination cases between the interest of the parent and the interest of the State. We recognize a parental interest in preserving the integrity of the family unit. In addition, we recognize the statutory presumption that a child's best interest will be served by leaving the child with the parent. *See* Iowa Code § 232.1.

■ However, we also recognize that this parental interest is not absolute and may be lost by certain parental conduct. *In re T.O.*, 470 N.W.2d 8, 10 (Iowa 1991). The State, as parens patriae, has the duty to make sure that every child within its borders receives appropriate care and treatment. *In re D.T.*, 435 N.W.2d 323, 329 (Iowa 1989). Our juvenile statutes are designed to effectuate that duty. For example, a child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication. The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home. *In re C.M.T.*, 433 N.W.2d

55, 56 (Iowa App.1988). If any one of the definitional grounds of a child in need of assistance are met, that is enough to terminate. *See In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988).

■ Thus our statutory termination provisions are preventive as well as remedial. *In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990). Their goal is to prevent probable harm to the child; they do not require delay until after the harm has happened. *Id.*

■ Finally, the grounds supporting termination of parental rights must be proven by clear and convincing evidence. Iowa Code § 232.116(1)(g)(4); *In re A.M.S.*, 419 N.W.2d at 725.

## IV. *Supplementing the Record.*

■ We first address the State's and the guardian ad litem's contention that the court of appeals erred when it allowed Jeannie to supplement the record. We think an appellate court can, in limited circumstances, remand to supplement the record. We think the court of appeals should not have done so in this case because the August 30 hearing involved children other than Melissa. The juvenile court made findings only as they related to these children. So the court of appeals was in the position of a trial court, making its own findings from the same evidence on the issue of termination regarding Melissa. This put the State and the guardian ad litem in the untenable position of having to respond to a record they never thought would be relevant in this appeal.

For these reasons, we do not consider the supplementation of the record on behalf of Jeannie or the one on behalf of the State. We limit our review to the record made in the termination proceeding involving Melissa.

## V. *The Termination Issue.*

The State sought termination by way of Iowa Code section 232.116(1)(g). That section provides in relevant part:

232.116 Grounds for termination.

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

. . . .

g. The court finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Here there is no dispute as to proof of the first three elements. As is usually the case, the contested element is the last: whether there is proof by clear and convincing evidence that at the present time the child cannot be returned to the custody of her parents as provided in section 232.-102.

Our focus is on section 232.102(5), which pertinently provides:

232.102 Transfer of legal custody of child and placement.

. . . .

5. Whenever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian. Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that:

. . . .

b. The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available.

The definitional grounds under which the juvenile court adjudicated Melissa a child in need of assistance are found in section 232.2(6)(b), (c), and (n):

6. *"Child in need of assistance"* means an unmarried child:

. . . .

b. Whose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child.

c. Who has suffered or is imminently likely to suffer harmful effects as a result of either of the following:

(1) Mental injury caused by the acts of the child's parent, guardian, or custodian.

(2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

. . . .

n. Whose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care.

▮ The juvenile court found by clear and convincing evidence that the definitional grounds in section 232.2(6)(b), (c), and (n) still existed and that Melissa could not be protected from such harm if she were returned to her parents. On that basis, the court terminated the parental rights of both parents. Because Tom did not seek further review, we concern ourselves only with whether the juvenile court correctly terminated Jeannie's parental rights. For reasons that follow, we think there is clear and convincing evidence that Melissa cannot safely be returned to Jeannie.

The record is replete with evidence of Tom's inability to maintain sobriety and be an effective parent. There have been repeated instances of physical and verbal abuse of Jeannie when Tom was intoxicated. Some of these instances were witnessed by the children in the home.

And siblings of Melissa have not escaped Tom's alcohol-induced violence. In April 1990, Tom apparently kicked Tommy in the face. Six stitches were required to close the child's wound. Tom could not recall what had happened because he was too intoxicated to remember. Jeannie had left her children with Tom and his mother, both of whom were drinking at the time. Tom was convicted of assault for this incident and was incarcerated.

Jeannie separated from Tom after this incident and was separated at the time of the termination hearing. During this period of separation Jeannie filed a dissolution action. That action was still pending at the time of the termination hearing.

Tom has been convicted of eleven other assaults, ten of them involving Jeannie. He has violated a no contact order and for that has been found in contempt of court. During 1990, Tom spent 129 days in jail. When the termination hearing was held he had been out of jail only two weeks. In the two-year period prior to the termination hearing, Tom had not completed any inpatient treatment program for alcohol abuse.

The record reflects that Jeannie has also had lapses of responsibility toward the children. For example, in 1989, Jeannie ran over Joshua after he had fallen out of her car. The child suffered a broken pelvis. Joshua was placed in foster care because he needed time to recuperate from his injuries. He was returned home after five weeks of healing. As a result of this incident, Jeannie was convicted of operating a car without a registration and was jailed for this offense. She was also charged with reckless driving.

During this same period, the school was reporting that the children had been coming to school late, had bruises on their bodies, and were without shoes.

Several other factors favor termination.

By the time of the termination hearing, Melissa had been out of the home for two years. During that time Jeannie had a chance to improve her ability to care for Melissa. The record shows that she has failed to do so.

From April 1989 through May 1990, Hillcrest Family Services provided in-home therapy for the family. Seventy-four weekly appointments were scheduled. Tom and Jeannie missed or canceled about one-third of them.

At the appointments that were kept, a family therapist worked with Tom and Jeannie on parenting skills and relationship issues. The therapist reported that progress was sporadic and there was no follow through with what had been learned. No significant improvement was seen.

Hillcrest persisted in attempting to teach the parents parenting skills. Case workers testified this effort failed because of chaos in the home and the parents' unwillingness to apply what they had learned. The counselor who was working with the parents opined that Jeannie would need to undergo a minimum of two to five years of therapy before she would be able to provide for the needs of Melissa. The record also reflects that the parents resisted efforts of the department to help them, and on one occasion they threatened a caseworker with physical harm.

For about six weeks in the fall of 1989, the parents participated in a nurturing program offered by the county mental health center. Jeannie attended ten full and two half classes of the fifteen 2–hour sessions. Tom and Jeannie attended only three classes together.

While Jeannie apparently learned the parenting skills that were taught, she showed limited ability to carry them out. She admitted that she needed to improve her parenting skills. Yet she made little progress in improving the environment for her children still in the home. From February through May 1990, in-home nurturing classes were provided twice each week. During these sessions, Jeannie was unable to apply the parenting skills she had been taught with regard to the children still in the home. The home environment was chaotic, with the children out of control a good deal of the time. The counselor opined that a lack of nurturing and structure in

Jeannie's own family contributed to her limited parenting skills.

In June 1990 Jeannie entered an in-patient co-dependency program. At this point the two older children were out of the home and under the care and supervision of the department. The remaining two children—Tommy and Joshua—were placed in foster care so that Jeannie could enter the co-dependency program. Jeannie was required to obtain a suitable residence within thirty days after her release from the co-dependency program so that Tommy and Joshua could be returned to her care.

Instead—after only ten days in treatment—Jeannie left the co-dependency program against medical advice and against her caseworker's recommendation. She was gone for approximately a month without informing the department of her whereabouts. The department later learned that she had spent the time in Minnesota with her sister.

Before entering the co-dependency program, Jeannie had exercised visitation with Melissa about three times a week. From August 1990 to the date of the termination hearing in January 1991, Jeannie requested four or five visits with Melissa. The department was only able to arrange two of those visits. Some of the blame for the missed visitation therefore belongs to the department because it failed to honor these requests. But that does not detract from the fact that Jeannie, during this period of time, requested few visits with Melissa.

At the time of the termination hearing, Jeannie was twenty-eight years old. She was living with her sister-in-law and her sister-in-law's three children. All of Jeannie's children had been out of the home since June 1990. In the winter of 1990, Jeannie worked for about two months. Her only other employment was working in a carnival as a child. She has completed the eleventh grade.

Jeannie testified that eventually she wants to try to raise all five children. But her present wish was to try to parent one or two of the children rather than all five. She conceded that before May 1990 she was not willing to take responsibility for

the children but that she was willing to do so now.

At the time of the termination hearing, Melissa was nearly three years old and had been in foster care about two years. The record reflects that Melissa is thriving in foster care. She had been placed in her current foster home in November 1989 after an incident of abuse by a former foster parent. Melissa is adoptable and can be placed if parental rights are terminated.

All of this evidence boils down to one inescapable conclusion: Jeannie is simply incapable of meeting the emotional and physical needs of five children, especially as those children grow older. We think two years is more than enough time for Jeannie to prove her parenting capabilities. Despite numerous services and painstaking patience by the department and the juvenile court, Jeannie has simply not demonstrated an ability to carry out what these services were intended to teach her. We agree with the State that this patience is translating into intolerable hardship for Melissa.

Melissa's chance to grow and thrive in a stable, nurturing, and permanent environment is now. We think returning Melissa to Jeannie at this point would expose Melissa to the very harm that required her removal in the first place.

Although we have not considered the record supplementations in reaching our decision, we have carefully reviewed them. Had we considered the supplementations, our decision would have been the same.

## VI. *Disposition.*

Because we conclude there was clear and convincing evidence to terminate Jeannie's parental rights concerning Melissa, the court of appeals' decision regarding Jeannie is vacated and the juvenile court decree is affirmed.

DECISION OF COURT OF APPEALS VACATED IN PART; DECREE OF THE JUVENILE COURT AFFIRMED.