# IN THE COURT OF APPEALS OF IOWA

No. 23-1329
Filed January 10, 2024

**IN THE INTEREST OF J.V.,**
**Minor Child,**

**J.V., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A father appeals the termination of his parental rights to his son. **AFFIRMED.**

Miguel A. Alvarado (until withdrawal) and Clara R. Avenarius of Branstad & Olson Law Office, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

A father, Julio, challenges the order terminating his parental rights to his son, J.V., born prematurely in October 2022.[1] The juvenile court cited Julio's unaddressed methamphetamine use, criminality, and inability to provide a safe and stable home for J.V. On appeal, Julio admits struggling with addiction but contends the State did not show that substance use affected his ability to parent. Julio also argues that termination was not in J.V.'s best interests and the court should have preserved his parental rights based on the closeness of their relationship.

After an independent review of these child-welfare proceedings, we reach the same conclusion as the juvenile court.[2] The record shows that Julio was an active user of methamphetamine and his unabated drug use stymied the reunification process. Thus, the State satisfied the elements under Iowa Code section 232.116(1)(h) (2023). And because the pre-adoptive, foster family was meeting J.V.'s chronic medical needs, termination was in his best interests under section 232.116(2). Finally, while Julio has a connection with J.V., the father did not offer clear and convincing proof that severing their bond would harm J.V. under section 232.116(3)(c).

## I.      Facts and Prior Proceedings

J.V.'s life had a rough start. He was born at thirty-six weeks gestation, and his umbilical cord tested positive for methamphetamine. His mother acknowledged

---

[1] The order also terminated the rights of J.V.'s mother. She does not appeal.

[2] We review termination proceedings de novo. *In re A.S.*, 743 N.W.2d 865, 867 (Iowa Ct. App. 2007). The State must prove a ground for termination by clear and convincing evidence. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but we are not bound by them. *Id.*

using methamphetamine during her pregnancy. He spent nine days in the neonatal intensive care unit because of respiratory failure, clinical infection, and feeding problems. Through his first year, J.V. continued to have one or two medical appointments every week. The court approved his removal from parental custody soon after his birth. And he has never returned to their care. The court adjudicated him as a child in need of assistance (CINA) in December 2022.

Julio was not married to J.V.'s mother, but he knew he could be J.V.'s father from the day of delivery. His paternity was confirmed in January 2023. Before that confirmation, the mother reported to the Iowa Department of Health and Human Services (the department) that Julio struggled with substance use and engaged in domestic violence; she was seeking a civil protective order to prevent contact with him. The department then asked Julio to complete drug testing. He failed to return his first sweat patch in early January. About two weeks later, his second sweat patch tested positive for methamphetamine. But Julio denied ever using the drug, attributing the test result to being around friends who used methamphetamine. The department recommended that Julio obtain a substance-abuse evaluation.

He did not do so for two months. In the interim, Julio was charged with possession of methamphetamine. When he was evaluated in March, he admitted using methamphetamine daily. The evaluator recommended extended outpatient treatment. But according to the department, Julio did not make a substantial effort to engage in that recommended treatment. And he tested positive for methamphetamine again in April. Julio did not start treatment because he did not have insurance, but he did not accept the department's offer to help him apply for Medicaid until June. Because he was not engaging in services, the department

declined to offer Julio drug screens for the three months just before the termination hearing.[3]

Early in the CINA case, housing was a problem for Julio. He was married but separated from his wife. According to the case worker, when J.V. "came into the picture, she had given him the ultimatum, 'Choose us or choose [J.V].'" The worker also recalled that Julio's wife kicked him out of the house because of his drug use. For about three months, Julio moved out of the house. By the time of the termination trial, he had moved back in with his wife and their adult children.

On the positive side, Julio was consistent in his twice weekly visits with J.V. He came prepared with diapers and other necessities. According to the social worker, Julio was "engaged and attentive" holding J.V. and kissing him. But the father was less diligent about attending J.V.'s medical appointments. Despite being invited by the foster parents to every appointment, Julio attended only twice throughout the CINA case. Likely because he did not take an active role in J.V.'s health care, Julio had little knowledge of the child's significant medical issues.

After a permanency hearing in April, the court directed the State to petition for termination of parental rights. It did so, alleging termination was proper under Iowa Code section 232.116(1)(h). After a June hearing on the petition, the court ordered termination on that ground. Julio appeals.

## II. Analysis

In evaluating termination appeals, we generally follow a three-step process. First, we check whether the State proved a ground for termination under section

---

[3] The case worker testified: "We generally wouldn't [offer a drug screen] until he's engaged in some services to show that he's demonstrating attempts at sobriety."

232.116(1). *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Second, we evaluate whether termination is in the child's best interests under section 232.116(2). *Id.* Third, we consider whether any circumstances listed in section 232.116(3) preclude termination. *Id.* at 220. We will address each step.

### A. Ground for Termination

The juvenile court terminated Julio's rights under section 232.116(1)(h). To satisfy that ground, the State needed to prove by clear and convincing evidence:

> (1) [J.V. was] three years of age or younger.
> (2) [He] had been adjudicated as [CINA] pursuant to section 232.96.
> (3) [He] had been removed from the physical custody of [his] parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that [he] cannot be returned to the custody of [his] parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h); *see In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing"). Julio challenges only the fourth element.[4]

---

[4] Our case law offers two interpretations for finding that a child "cannot be returned" to parental custody as provided in section 232.102, which discusses transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child." Many cases cite *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992), which quotes section 232.102(4)(a)(2)—then numbered section 232.102(5)(b)—for the proposition that custody should be transferred only if the court finds "the child cannot be protected from some harm which would justify adjudication of the child as a child in need of assistance and an adequate placement is available." *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016). But more recent cases observe that our supreme court often describes that element simply as the inability to "safely return" children to a parent's custody. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases).

Julio argues that at the time of the termination hearing he had stable housing and employment. And the department reported no safety concerns in the home he shared with his wife and two adult children. As for his methamphetamine use, Julio argues there was "no evidence in the record" that he was ever under the influence during parenting time with J.V. or would be unable to care for his son because of his drug involvement. He also complains that the department denied him the chance to demonstrate sobriety by not offering drug tests for three months.

Without endorsing the department's "policy" of not offering drug screens in this situation, we find clear and convincing evidence in the record that J.V. could not be safely placed in Julio's custody at the time of the termination hearing. Julio admitted in his substance-use evaluation that he used methamphetamine every day. That revelation came after he told the department he never used the drug. He testified that he didn't remember when he started using methamphetamine and denied that he was using the drug regularly at the beginning of the CINA case. But the juvenile court did not find his testimony credible. When the court makes a "specific and strong adverse credibility finding," as it did here, we may defer to that determination. *See A.S.*, 743 N.W.2d at 868.

True, the State did not offer direct evidence that Julio's methamphetamine use interfered with his ability to parent safely. Such evidence would have been helpful to our review. But we reject his comparison to *In re A.B.*, where the supreme court reversed the termination because the mother was addressing her cocaine use. *See* 957 N.W.2d 280, 297 (Iowa 2021). Unlike that mother, Julio has not addressed his methamphetamine use. In fact, he faced criminal charges for possession. And our supreme court has recognized that "a parent's

methamphetamine addiction by itself can result in 'harmful effects' to the child." *In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014).

Beyond his methamphetamine use, Julio did not prioritize J.V.'s health care. As the juvenile court found:

> The father did not know the name of [J.V.'s] primary doctor. The father did not know [J.V.] wore a binder because his chest muscles weren't formed. The father did not know [J.V.] attended physical therapy for torticollis. The father did not know what was going to be done for [J.V.'s] ear infections. The father did not know [J.V.] was referred to an ENT. The father never attended [J.V.'s] Star Center medical appointments.

Without more detailed knowledge of J.V.'s medical needs and treatments, Julio was not ready to take custody of the child. *See In re J.E.*, No. 21-1962, 2022 WL 951031, at *1 (Iowa Ct. App. Mar. 30, 2022) (upholding termination when mother failed to take an active role in child's medical care, "relying entirely on his foster mother and missing most of his healthcare appointments").

## B. Best Interests

Julio next contests the juvenile court's finding that termination was in J.V.'s best interests. When determining best interests, we consider the child's safety, the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). We also consider the child's integration into his foster family. *Id.* § 232.116(2)(b). Heeding these factors, we conclude termination is in J.V.'s best interests. He has never lived with Julio. While Julio interacts well with his son during supervised visits, it is J.V.'s foster parents who have ensured that his medical needs are met. As the juvenile court found, there is "no question" that the foster parents intended

to provide J.V. with the necessary nurturing and stability. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012). We find this step for termination satisfied.

### C. Closeness of Parent-Child Relationship

Finally, Julio contends the juvenile court should not have terminated his rights given their father-son bond. *See* Iowa Code § 232.116(3)(c). When analyzing claims under section 232.116(3), our supreme court has decided that the burden shifts to the parent to prove an exception can save the legal relationship. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). Julio does not meet that burden. As the State notes on appeal, J.V. is very young, has never resided with his parents, and only interacts with his father for three hours each week. Given the lack of significant contact, Julio cannot show by clear and convincing evidence that severing their legal relationship would hurt J.V.

**AFFIRMED.**