# IN THE COURT OF APPEALS OF IOWA

No. 24-1060
Filed November 13, 2024

**IN THE INTEREST OF M.W.,**
**Minor Child,**

**B.D., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, Judge.

A mother appeals the termination of her parental rights with respect to her daughter, pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2024). **AFFIRMED.**

Kyle E. Focht of Focht Law Office, Council Bluffs, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Mandy L. Whiddon, Omaha, Nebraska, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

The mother, B.D., appeals the juvenile court order terminating her parental rights with respect to her daughter, M.W., under Iowa Code section 232.116(1)(e), (h), and (*l*) (2024).  The mother argues (1) there was not clear and convincing evidence supporting the grounds for termination, (2) the court improperly declined to apply an exception to avoid termination, and (3) she should have been granted additional time to work towards reunification.  We affirm.

## I.  Background Facts and Proceedings

The child was born in April 2022.  The child came to the attention of the Iowa Department of Health and Human Services (HHS) on December 4, 2022, based on the father having strangled the mother while in the presence of the child and her siblings.  The father was arrested for domestic abuse assault on December 14.  The child was adjudicated as a child in need of assistance (CINA) on January 25, 2023, pursuant to Iowa Code section 232.96A(3)(b) (2022).

In February, the father entered the mother's home while under an active no-contact order while the child and her two-year-old half-sibling were present.  The father became angry and began to throw objects.  During this incident, the mother abandoned the home with the child's half-sibling but left the child with the angry father.  When law enforcement arrived, the father had left and the child—then ten months old—was alone in the home.  The home was unhabitable—there was "animal feces in the home, trash, dirty diapers and drug paraphernalia observed in the home."  The mother was arrested for child endangerment for the condition of the home as well as leaving the child unattended with her father.  The child was

removed from the home on February 28 and placed with her maternal great-aunt who she still resided with at the time of the removal hearing.

In June the mother completed Journey Beyond Abuse and underwent a mental-health evaluation and substance-use evaluation the next month. But per HHS, the mother

> has still engaged in an unhealthy relationship with [the father]. In jail phone calls between [the father] and [the mother] in April of 2024, her and [the father] at times have heated arguments, causing them to curse at one another, hang up the phone and call each other names. When [the father] was most recently arrested, he was with [the mother], but he was driving his other girlfriend's car . . . . In jail phone calls [the father] tells both women he wants to be with them. [The mother] even encourages [the father] to call [his girlfriend,] as[] [his girlfriend] is a "better hustler" than she is and is "better at selling weed."

The Family Access Center (FAC) service provider reported that she "has been responsible about communicating and coordinating interactions with placement during this period" and "was patient and caring" with her children. FAC also reported she "will get unsupervised visits with [the child] moving forward, with progressively more overnight stays as weeks go on, pending positive review."

The mother gave birth to another daughter on November 7. Initially, the mother was enjoying unsupervised visits with the child. But HHS received a new intake on December 13, with allegations that the mother and the father were under the influence of marijuana while caring for the newborn and the child. The newborn was removed on December 14, and hair tests for both children came back positive for methamphetamine and THC. As a result, the mother was charged with three counts of child endangerment—methamphetamine exposure, all class "D" felonies, and one count of child endangerment, an aggravated misdemeanor.

On February 3, 2024, a no-contact order was entered preventing the mother from having any contact with the child, and on February 28, the mother pleaded guilty to one count of child endangerment, an aggravated misdemeanor. She was sentenced to two years in prison, with the prison sentence suspended, and she agreed to extend the previous no-contact orders for five years (until February 28, 2029). This no-contact order is still in effect. Following entry of that order, the termination petition was filed on March 22.

The mother was arrested for four counts of forgery, second-degree theft, and conspiracy to commit a nonforcible felony on March 27. While she was released from jail on March 29, those criminal charges were still pending at the time of the termination hearing. And on April 4, the father's probation officer found him and the mother together again, and the father was in possession of methamphetamine paraphernalia and THC wax. The mother was also dismissed from a substance-use outpatient course for lack of attendance and has consistently failed or not shown up for drug tests. The district court found that the mother's random drug screen in

> December of 2023 was positive for methamphetamines. She failed to show for drug screens on 12/27/23, 3/7/24, 3/14/24, 3/25/24, 4/1/24 or 4/11/24. Of the thirty-three random screens the mother has been offered, sixteen were positive for illicit substances, fourteen were no shows, one was dilute, and only one was negative for illicit substances.

(Cleaned up.)

The termination hearing was held on May 8, and the order terminating the mother's parental rights was entered on June 13.[1] The mother now appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## III. Discussion

We use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). The court must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether the court should exercise any of the permissive exceptions to termination. *Id.* at 472-73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). The court will also consider any other claims the parent brought. *See In re T.P.*, No. 19-0162, 2019 WL 3317346, at *2 (Iowa Ct. App. July 24, 2019).

### A. Grounds for Termination

The mother's parental rights were terminated under Iowa Code section 232.116(1)(e), (h), and (*l*). We need only to find sufficient evidence on one of those grounds to affirm. *D.W.*, 791 N.W.2d at 707.

To terminate parental rights under paragraph (h), the district court must find that (1) the child is three years of age or younger; (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical custody of

---

[1] The juvenile court terminated the father's parental rights as well, but he does not appeal.

the child's parents for the required period of time, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h). "[A]t the present time" means "the time of the termination hearing." *D.W.*, 791 N.W.2d at 707.

There is no doubt that all four requirements are met. The child, born in 2022, is under three years of age, was adjudicated a CINA in January 2023, and has been out of the mother's custody for at least six of the last twelve months. The mother argues that the child can be returned to her at the present time. Yet she also admits that the current no-contact order is a "barrier to reunification." We agree with the mother that the no-contact order between her and the child prevents the child from being returned to her custody. And even if we accept the mother's claims that she has made progress in her substance-use treatment (her drug-screen history suggests otherwise), she recently endangered the child by exposing her to methamphetamine and THC. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent . . . if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication."). Thus, the juvenile court correctly found that all grounds for termination under paragraph (h) were met.

## B. Exception to Termination: Parent-Child Bond

The mother asserts that termination is not in the child's best interests due to the bond between her and the child. The best interests analysis is separate from an analysis of exceptions under Iowa Code section 232.116(3). *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023)

("Consideration of the parent child bond is not a part of our best-interests analysis."). Since the mother references the child's best interests in relation to exceptions to termination, we will consider that argument alongside her parent-child bond exception argument.

"[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)[]." *A.S.*, 906 N.W.2d at 476. The exceptions under Iowa Code section 232.116(3) are permissive and not mandatory.

The court need not terminate a parent's rights if it finds by clear and convincing evidence "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709.

It is not disputed that the mother used the offered visitation, consistently requested additional visitation, stayed in contact with the child's placement and social workers assigned to the case, and exhibited appropriate parenting and bonding with the child during interactions. But we must also "look to the child's long-range as well as immediate interests." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) That analysis involves "considering what the future holds for the child if returned to the parents." *Id.* When assessing the type of care the parent is capable of providing in the future, we "look to the parents' past performance."

The child had just turned two years old at the time of the termination hearing. The no-contact order will not end until the child is seven years old. "[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Moreover, the child is currently placed with a relative who can provide her with permanency, so we cannot say that denying this exception would be disruptive or detrimental to her development. Applying an exception to termination here would deny the child permanency for years.

And we reiterate that this no-contact order was put in place because the mother exposed the child to dangerous drugs and disobeyed a court order by allowing the child to be alone in the presence of her abusive father. And no evidence suggests the mother has addressed her drug issues—only one drug screen has come back negative out of thirty-three scheduled screens. The mother harms both the child's "long-range as well as immediate interests" and any bond is negated by the harm she presents to the child. *J.H.*, 952 N.W.2d at 171. We decline to apply this exception to termination.

## C. Additional Time Towards Reunification and Reasonable Efforts by HHS

In her petition on appeal, the mother suggests in passing that the juvenile court should have granted six months of additional time for her to work towards reunification. "To grant a parent a reprieve from termination, a juvenile court must be able to 'enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination the need for removal of

the child from the child's home will no longer exist at the end of the additional six-month period.'" *In re M.R.,* No. 13-1190, 2013 WL 5498097, at *3 (Iowa Ct. App. Oct. 2, 2013) (quoting Iowa Code § 232.104(2)).

In six months from the date of the termination hearing it will still have been less than a year since the mother was charged with three counts of child endangerment—methamphetamine exposure, all class "D" felonies, and one count of child endangerment, an aggravated misdemeanor. And the no-contact order will still be in place in six months from the date of the termination hearing. These are both inescapable barriers to reunification.

Lastly, the mother makes one passing reference suggesting "[HHS] did not use reasonable efforts to address the problems which led to the removal of [the child]" while providing no further explanation for this claim. "Failure to cite authority in support of an issue may be deemed waiver of that issue." Iowa R. App. P. 6.903(2)(a)(8)(3); *see In re Z.M.*, 772 N.W.2d 268 (Iowa Ct. App. 2009) (applying rule 6.903(2)(a)(8)(3) where a father failed to raise an issue in a termination appeal).

And even if we addressed this issue, HHS is required to supply only those services which "are reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa 2000). We can identify no reasonable service HHS could have provided that would remove the no-contact order between the mother and the child.

Accordingly, we affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**