# IN THE COURT OF APPEALS OF IOWA

No. 24-1544
Filed December 4, 2024

**IN THE INTEREST OF B.R.,**
**Minor Child,**

**M.F., Mother,**
  Appellant.
_____

  Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.


  A mother appeals the termination of her parental rights with respect to her son, pursuant to Iowa Code section 232.116(1)(e), (f), and (*l*) (2024). **AFFIRMED.**


  Lynnette M. Lindgren of Broerman, Lindgren & Denny, Ottumwa, for appellant mother.

  Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

  Nicole Steddom, Oskaloosa, attorney and guardian ad litem for minor child.


  Considered by Greer, P.J., Langholz, J., and Carr, S.J.*

  *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

The mother, M.F., appeals the juvenile court order terminating her parental rights with respect to her son, B.R., under Iowa Code section 232.116(1)(e), (f), and (*l*) (2024).[1]  The mother argues (1) there was not clear and convincing evidence supporting the grounds for termination, (2) termination is not in the child's best interests, and (3) an exception to termination should have been applied.  We affirm.

## I.  Background Facts and Proceedings

B.R. was born in 2019.  This case originated when the family came to the attention of the Iowa Department of Health and Human Services (HHS) in May 2023.  It was reported that the mother had been using methamphetamine and allowed others to use methamphetamine and other drugs in the home she raised the child.  She refused a drug screen and HHS reported observing behavioral indicators of substance use.  The mother had previously been involved with HHS based on substance use in 2019 and 2022.

The next month HHS learned that a shooting had occurred at the mother's residence.  The child told a social worker that he was home when the shooting had occurred and that the mother often drank until she fell asleep on the floor.  The mother arranged for the child to stay with her adult daughter as part of a safety plan developed with HHS.

HHS received further reports of the mother using methamphetamine and abusing alcohol.  The mother stated she would take part in services to address her

---

[1] The juvenile court terminated the father's parental rights as well, but he does not appeal.

substance use but did not initiate participation in any such services. In July 2023, a child-in-need-of-assistance (CINA) petition was filed, and the child was adjudicated a CINA in September. The child was formally removed at that point and has not returned to his mother's care since.

In December, the mother's home was searched by law enforcement and methamphetamine was found. The mother claimed she does not have a problem and only uses the methamphetamine "recreationally." In her view, the child was not at risk because she claimed to only engage in substance use when the child is not present. The mother did not appear at the October dispositional meeting or a January 2024 review hearing. Around this time, the mother's adult daughter informed HHS she could no longer care for the child. The child was then placed with his foster parents and still lives with them today.

In February 2024, the mother told HHS she was continuing to abuse alcohol, and that it was difficult for her to stop because she had been drinking for the past twelve years. The juvenile court found that "the mother has a severe alcohol use disorder." She has reported to HHS that she needs to drink alcohol or she gets physically ill and goes into withdrawal. An HHS worker testified that the Family Care Services provider "observed [the mother] taking a couple of shots" before attending a visit with the child and reported the mother would often take part in visits while being hungover.

The mother was strangled by her paramour in March and has acknowledged that he associates with individuals who engage in substance use. In April 2024 the mother informed HHS that she would only attend residential treatment if the child was placed with her during treatment. She participated in her

first substance-use evaluation that month and tested positive for methamphetamine, amphetamine, marijuana, alcohol, clonazepam, and MDMA. The mother was recommended to participate in residential substance-use treatment but did not enter treatment at the YWCA until July 24. She reported to HHS that she tested positive for opiates and alcohol upon admission to residential treatment.

The permanency and termination hearing was held on September 9, and the order terminating the mother's parental rights was entered on September 10. The mother now appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## III. Discussion

We use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). The court must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether the court should exercise any of the permissive exceptions to termination. *Id.* at 472-73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

### A. Grounds for Termination

The mother's parental rights were terminated under Iowa Code section 232.116(1)(e), (f), and (*l*). We need only to find sufficient evidence on one of those grounds to affirm. *D.W.*, 791 N.W.2d at 707.

To terminate parental rights under paragraph (f), the district court must find that (1) the child is four years of age or older; (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical custody of the child's parents for the required period of time, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time as provided in section 232.102. Iowa Code § 232.116(1)(f). "[A]t the present time" means "the time of the termination hearing." *D.W.*, 791 N.W.2d at 707.

There is no doubt that all four requirements are met. The child, born in 2019, is four years of age or older, was adjudicated a CINA in September 2023, and has been out of the mother's custody for at least twelve of the last eighteen months. On appeal, the mother argues that the child can be returned to her at the present time. Yet she argued at the hearing that she would need a three-month extension before the child could be returned—admitting that the child could not be returned to her at the present time. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent . . . if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication."). We agree with the mother's assessment voiced at the termination hearing.

The State argues the mother failed to preserve error on her section 232.116(1)(f) issue, since, at the hearing, she argued she needed an extension before the child could be returned to her. In her testimony, the mother briefly argued that the child could be placed in her care at the time of the hearing, but her focus at trial was on obtaining an extension—an implicit admission that the

child could not be returned to her at the present time. At the time of the hearing, she lacked long-term housing and testified that the waiting list for housing was around ninety days. She had been in a residential treatment program at YWCA since July 24, but her residence there is limited to one year. Thus, acquiring longer-term housing is a necessity if the child is to be returned to her care. Her own attorney stated that the mother "very much requests the court to grant her an extension." When directly asked if she was "asking the court for an extension of time," the mother testified, "yes, please."

Passing on the State's error preservation argument and addressing the merits, we find the mother's admission that she needed more time, and the balance of the record, persuasive on the issue of whether the child could safely be returned to her at the time of the hearing. The statutory ground for termination was proven.

## B. Best Interests of the Child

The mother contests the district court's holding that termination was in the child's best interests. In addressing that argument, we emphasize the child's safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. *See In re A.B.*, 957 N.W.2d 280, 300 (Iowa 2021) (discussing Iowa Code section 232.116(2)). "We look to the parent's past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (cleaned up). We must also consider the child's integration into his foster family. *See* Iowa Code § 232.116(2)(b).

The child has been formally removed from the mother's care for over a year and has experienced two prior HHS cases. Every case has involved the mother's

alcohol and substance use, indicating a high level of instability in the child's development and caretaking. The mother has tested positive for methamphetamine, amphetamine, marijuana, alcohol, clonazepam, and MDMA, as recently as April of this year. She did not enter residential treatment until July. And she tested positive for opiates and alcohol upon admission to residential treatment.

Even if she has been completely sober since her admission, two months of sobriety does not weigh in her favor when considering her twelve years of substance use. And this long history of substance use informs our decision much more than her recent efforts to address that use. *See In re C.B.*, 611 N.W.2d 489, 195 (Iowa 2000) ("The changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient.").

The child is doing well in the foster home HHS placed him with in January. The child is loved, cared for, and calls his foster parents "nana and papa." Although that family will not be his permanent home, the foster parents' adult daughter has expressed an interest in adopting the child and is in the process of acquiring her adoptive care license. Termination and pursuit of adoption provide the child with the best probability of permanency and stability. Termination is in the child's best interests.

## C. Exceptions to Termination

The mother raises two exceptions on appeal—Iowa Code section 232.116(3)(a) and (3)(c). Section 232.116(3)(a) was not raised below, does not apply, and is not preserved on appeal.

"[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)[]." *A.S.*, 906 N.W.2d at 476. The exceptions under Iowa Code section 232.116(3) are permissive and not mandatory.

The court need not terminate a parent's rights if it finds by clear and convincing evidence "that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709.

It is clear the mother and child are bonded and love each other. But the bond alone is not enough to apply the exception, *see id.*, and we must also "look to the child's long-range as well as immediate interests." *J.H.*, 952 N.W.2d at 171. That analysis involves "considering what the future holds for the child if returned to the parents." *Id.* When assessing the type of care the parent is capable of providing in the future, we "look to the parent's past performance." *Id.* (cleaned up).

We reiterate that the mother has failed to demonstrate that her substance use will not continue. At the time of termination she had, at most, two full months of sobriety. She did not have long-term housing secured. The child was five years old at termination, has been involved with HHS since the year he was born, and cannot afford to delay his permanency further on the mother's promise that the changes she has made will continue into the future. *See In re D.A.*, 506 N.W.2d

478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." (citation omitted)). We decline to apply this permissive exception.

Accordingly, we affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED.**