**IN THE COURT OF APPEALS OF IOWA**

No. 25-0643
Filed July 2, 2025

**IN THE INTEREST OF A.V.,**
**Minor Child,**

**J.V., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Scott County, Michael Motto, Judge.


A father appeals the termination of his parental rights.  **AFFIRMED.**



G. Brian Weiler, Davenport, for appellant father.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Christine Frederick of Zamora, Taylor & Frederick, Davenport, attorney and guardian ad litem for minor child.


Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

The father contests the juvenile court's determination that the termination of his parental rights to his child, A.V., born in 2022, was proper under Iowa Code section 232.116(1)(e) and (h) (2025). On our review, we find the termination of the father's parental rights was warranted under section 232.116(1)(h). We affirm the termination of the father's parental rights.

We review termination proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "Termination of parental rights under chapter 232 follows a three-step analysis. First, the court must determine if a ground for termination under section 232.116(1) has been established." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Second, if a ground for termination is established, the court must apply the best-interest framework. *Id.* at 706–07. And third, the court must determine if any statutory exception applies. *Id.* at 707. That said, "we review only the issues raised and briefed by the parent challenging the termination." *In re A.G.*, No. 22-0157, 2022 WL 952871, at *1 (Iowa Ct. App. Mar. 30, 2022); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (discussing error preservation).

The juvenile court found a statutory basis for termination in section 232.116(1)(e), pertaining to the failure of the father to maintain significant and meaningful contact with his child, and section 232.116(1)(h), which allows the court to terminate parental rights when it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father challenges only the fourth element of section 232.116(1)(h), claiming the child could have been returned to his custody at the time of the termination hearing. Because one statutory basis is sufficient for termination, *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012), we address only paragraph (h). The juvenile court found the father's unaddressed substance use and lingering anger issues prevented the court from returning the child to the father's custody. In his petition on appeal, the father "does not dispute the [juvenile] court's statement of the evidence, but rather, the conclusion that the evidence supports a finding that the elements for [termination] under Iowa Code § 232.116(1)(h) have been prove[d] by the facts on record." After our review of the record, we find the father's unaddressed substance use and persistent anger-management issues precluded a return of the child to his custody at the time of the termination hearing, supporting termination of his parental rights.

First, we consider the father's substance-use issues. At the February 2025 termination hearing, the father claimed he did not have problems with illicit and dangerous substances, specifically cocaine and marijuana, and could stop using them at any time. After a positive drug test in January, the Iowa Department of Health and Human Services (HHS) attempted to drug test the father again that same month and in February, but the father was a "no call, no show" for the appointments. Rather, the father chose to use these substances in the months between the child's removal in February 2023 and termination hearing two years later. The father admitted to cocaine use three times in 2024—at a Super Bowl

party in February, his birthday in March, and in early May. Independent of his admissions, the father tested positive for cocaine via sweat patch in July 2024, November, and the following January. Two of these positive tests occurred after the juvenile court decided to continue termination proceedings for an additional six months,[1] a time when the father was to prove to the court his fitness to care for his child. The father denies cocaine use after May 2024 and blamed his positive test results on environmental contamination or expired antibiotics, although he offered no evidence besides his testimony in support of these contentions. And even though he completed a substance-use evaluation in August 2024, which recommended outpatient treatment, the father had failed to engage in treatment as of the termination hearing.

On appeal, the father argues that his "occasional drug use" does not affect the well-being of his child. We disagree. According to HHS, the father "does not see concerns with substance use if he has a 'babysitter for [A.V.]' and he 'uses and stays in Illinois for a few hours' until he is sober enough to come back to be with [A.V.]." At the termination hearing, he admitted substance use but denied being "an active cocaine user." The father has not taken accountability for his substance use. *See In re G.G.*, No. 23-2021, 2024 WL 962319, at *5 (Iowa Ct. App. Mar. 6, 2024) (denying request for additional time and affirming termination based on the parents' "past failures and inability to be accountable for their actions"). The father's inability to answer for his recent substance use leads us to

---

[1] At the September 2024 permanency hearing when the court decided to give the father additional time to work toward reunification, HHS noted no safety concerns as the father's most recent drug tests were negative.

question whether he is committed to maintaining a substance-free lifestyle to care for A.V. in the future. *See A.B.*, 815 N.W.2d at 776 ("The juvenile court concluded that if not for [the parent's] 'denial of drug use in the face of credible evidence to the contrary, reunification would be achievable.' However, because of those denials, [the parent's] drug problem was unresolved, and thus, he was 'not in a position to provide the safe and stable home [his children] need and deserve.'"). At the time of the termination hearing, the father's visits were back to fully supervised because when the visits had moved to partially supervised, the father tested positive for cocaine. With no effort to address his substance-use issues through treatment or counseling during the many months of these proceedings, we have no assurance he can safely parent if A.V. were returned to his custody.

Along with the substance-use issues, the father has failed to meaningfully address his anger issues. On appeal, the father denies the existence of any issues, stating, "[t]he 'concerns' about anger management are entirely lacking any factual support." On our review, several instances of conduct show the father cannot adequately control his actions while angry. This concern was identified early in this case, and the father failed to follow through with the required counseling to change his behavior.

During the termination hearing, the HHS case manager and licensed social worker indicated the father was "explosive" in interactions with HHS personnel throughout the case. The case manager reported a conversation with the father in which the father attacked the caseworker via text message:

> You are a piece of shit along with your department . . . and it's
> called freedom of speech. Get the fuck over it if your going to be in

this country. Every time you lie that gap in your tooth gets bigger. Check yourself.

If you think everything is about fucking drugs you dumb fucking towel head if you can't understand you probably shouldn't have lived in this. Don't know how your country deals with its children to go get suicide bomb and shit but that's not us we didn't do that here.

The father argues that these comments do not indicate anger-management issues but rather a difference in beliefs and opinions. But it is the anger that is relevant, not the particular opinions, and other evidence on the record sheds doubt on the father's assessment. First and foremost, after this conversation HHS took steps to ensure the safety of their staff. The caseworker and her supervisor decided it would be unsafe for the caseworker to continue meeting with the father outside of HHS business hours in locations other than the HHS office. These restrictions continued up until the termination hearing.

But reports of fear for safety first arose when the child was removed from the care of the father.[2] After removal, the child's closest available relative was the child's maternal grandmother, but according to HHS's report to the court:

> [The child's] maternal grandmother declined having the child in her care or supervising parent-child interactions as "she was not willing to take the baby because she is worried how [the father] is going to react. [The grandmother] is worried that [the father] will be violent towards them or vandalize their property[.]"

Because the grandmother declined placement, the child was placed in foster care. But allegations of violence persisted; the father sent threatening, racially-charged messages to the child's foster placement from his Facebook account. The guardian ad litem report from November 2023 details some of these messages,

---

[2] There were also allegations the father had assaulted the mother early in the proceedings.

including "How about I rape your mom and kill your baby faggot," "You want to stand with them that's what's going to happen," "send nigger," and "Sick fuck." Fears of threats against the placement persisted, as the father was instructed to stay away from the placement's home and had not been privy to the placement's address for "concerns of Dad going around to the house."[3]

Despite the father's denial of any anger-management issues, the father argues he "testified at length about the anger management services [that he] sought out and engaged in at the behest of HHS, as well as how he assessed his self-improvement as a result." The record shows that the father received some treatment to help with anger management but was unsuccessfully discharged after missing appointments. At the time of termination, the father had not completed any anger-management program, and although he spoke with a licensed therapist, the therapist did not specialize in anger management.

The record indicates the father's actions go beyond a "rude personality with poor interpersonal communication habits" and land firmly within the realm of threats causing a legitimate fear of violence. Threat of harm is enough to justify termination. *See In re J.R.*, No. 15-1096, 2015 WL 5311483, at *6 (Iowa Ct. App. Sept. 10, 2015) (affirming termination after "[t]he father refused to cooperate with [HHS] after making threats of violence towards others and a statement about harming himself").

In sum, the child could not be returned to the father's custody at the time of termination. Unaddressed substance use, *see A.B.,* 815 N.W.2d at 776, and

---

[3] The address was inadvertently disclosed at the termination hearing.

threats of violence, *see J.R.*, 2015 WL 5311483, at *6, prevent us from returning a child to their parent. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992) ("[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication."). Complicating the case, the child has significant medical conditions and fully supervised visits of a medically complex child do not provide assurance that the father adequately demonstrated the ability to independently meet the child's needs. *See In re J.H.*, 952 N.W.2d 157, 170 (Iowa 2020). We agree the State proved the elements for termination under section 232.116(1)(h).

Because "our review is confined to those propositions relied upon by the appellant for reversal on appeal," *Hyler*, 548 N.W.2d at 870, we affirm the termination of the father's parental rights without discussing the other steps.

**AFFIRMED.**