**IN THE COURT OF APPEALS OF IOWA**

No. 25-1630
Filed December 17, 2025

IN THE INTEREST OF E.M. and J.J.,
Minor Children,

M.J., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph Tofilon, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jason T. Carlstrom of Carlstrom Law Firm, West Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Brandy Lundy of Lundy Law, PLC, Moorland, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Greer and Sandy, JJ.

**TABOR, Chief Judge.**

Megan appeals the termination of her parental rights to her daughter and son. Because Megan has not shown that she can be a safe, sober parent, and because she will not likely achieve that standard within six months, we affirm.[1]

## I.    Facts and Background Proceedings

Nine-year-old E.M. has been the subject of three prior child-in-need-of-assistance (CINA) proceedings, all prompted by Megan's substance use and involvement with violent romantic partners. This fourth case opened in April 2024 when Megan's paramour Aaron assaulted her. E.M.'s father Joseph has joint custody and sole physical care under a bridge order. The juvenile court removed the child from both parents' custody but later placed E.M. in Joseph's care.[2]

In September, Megan gave birth to J.J. His umbilical cord tested positive for methamphetamine, amphetamine, THC, alcohol, and cocaine. Because of the risk posed by the parents' drug use, the court removed the infant from Megan's and Aaron's custody. And after a brief stint under a safety plan drafted by the Iowa Department of Health and Human Services, J.J. was placed with a foster family.[3]

The rest of the case is characterized by Megan's inaction in resolving the substance use and domestic violence concerns. Her drug tests were positive or

---

[1] We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

[2] Joseph had his own struggles during the CINA case but demonstrated sobriety and stability, and E.M. has been doing well in his care.

[3] The department's social work manager reported that J.J. is doing well and has a strong bond with this pre-adoptive family, as well as his older sister.

presumptively positive regularly.[4]  She resumed her fraught relationship with Aaron, violating no-contact orders and refusing to testify against him.[5]  In fact, shortly after J.J. was removed from their care, Megan and Aaron got married.

Seeing little progress toward reunification, the State petitioned to terminate Megan's and Aaron's parental rights in August 2025.  That month, Megan entered a residential treatment facility.  She tested positive for methamphetamine and marijuana at check-in, but providers reported she was doing well.  The facility allowed placement of children.  Megan also wrote a letter to the court vowing to stay in treatment and expressing her eagerness to reunite with her children.

After the hearing, the juvenile court terminated Megan's parental rights to E.M. under Iowa Code section 232.116(1) (2025), paragraph (f), and to J.J. under paragraph (h).  It also terminated Aaron's parental rights, but he does not appeal.

## II.     Discussion

We review termination proceedings in three steps.  *See In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021); *see also* Iowa Code § 232.116(1)–(3).  We first decide whether the record supports a statutory ground for termination; we next assess whether termination is in the children's best interests; and finally we examine whether a permissive exception applies to preclude termination.  *See In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025).  We address only the steps

---

[4] The department considers unexcused missed tests, refusals, and tampered tests as presumptively positive.

[5] During the CINA case, Aaron was charged for many offenses against Megan including domestic abuse assault causing injury, criminal mischief for breaking her car windshield, domestic abuse assault by strangulation, and three no-contact order violations.  Six months after E.M.'s removal, Aaron fought with Megan while she was driving, causing her to flip her vehicle.

challenged by a parent. *Id.* Megan raises two issues under step one. She argues the State didn't prove the statutory grounds for termination and asks for more time to work toward reunification.[6]

First, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010); *see* Iowa Code § 232.116(1)(a)–(p). The juvenile court found sufficient grounds to terminate under paragraph (f) as to E.M. and paragraph (h) as to J.J. Megan challenges only the common final element of those grounds, which requires clear and convincing proof that the child cannot presently be returned to parental custody as provided in section 232.102.[7] *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

Because the children can stay with her at the treatment facility, Megan argues the State didn't show they cannot be returned to her custody. But that

---

[6] Megan also highlights her long-standing traumas, mentions the department's placement decisions involving J.J., and expresses a desire for more visitation. The juvenile court denied Megan's motion for reasonable efforts, and she doesn't reprise it in her petition on appeal. She also suggests that there is no need to terminate her relationship with E.M. because the child is in Joseph's custody. *See* Iowa Code § 232.116(3)(a) (providing exception for termination when a child is in relative custody). But Megan has not developed these claims sufficiently for us to address them. *See In re R.M.-V.*, 13 N.W.3d 620, 623 n.1 (Iowa Ct. App. 2024).

[7] Our caselaw offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102, which discusses transferring the child's custody if staying in the home would be "contrary to the welfare of the child." In *In re M.M.*, the supreme court held that a child cannot be returned if it would expose him or her to "any harm amounting to a new child in need of assistance adjudication." 483 N.W.2d 812, 814 (Iowa 1992). Alternately, it means the inability to "safely return" children to their parents' care. *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either formulation, the State met its burden of proof here.

argument conflates placement with custody. "[P]hysical placement in the semi-supervised setting of a treatment facility is not the same as custody." *In re L.C.*, No. 25-0828, 2025 WL 2538907, at *2 (Iowa Ct. App. Sept. 4, 2025). And concerns persist about her ability to safely parent. Megan insists that future harm is speculative. But the case worker accurately summed up Megan's history, testifying that she has yet to successfully complete treatment, struggles to follow rules while in treatment, and "struggle[s] when she is out in the community." This cycle of treatment and relapse tips the scales away from reunification. *See In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021); *L.A.*, 20 N.W.3d at 533. Megan had only been drug-free for one month and, if discharged, had no stable home. She also hadn't eased concerns about domestic violence in her life. The State offered clear and convincing evidence that the children cannot be returned to her custody.

Megan next contends that the juvenile court should have given her six more months to work toward reunification. To grant that extension, the court must find the need for removal will soon be resolved. Iowa Code § 232.104(2)(b); *see In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct App. 2005). Megan argues she is doing well in treatment and future harm is speculative. But the juvenile court had "no confidence" that she could accomplish in the next six months what she had "not been able to accomplish in the last year and a half" while the children were removed. We agree. We commend Megan for her commitment to treatment. But even if she remains sober, the risk of domestic violence remains given her relationship with Aaron. So more time is unwarranted.

**AFFIRMED.**