# IN THE COURT OF APPEALS OF IOWA

No. 24-1630
Filed December 18, 2024

**IN THE INTEREST OF S.A.,**
**Minor Child,**

**M.A., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.

A mother appeals the termination of her parental rights to her one-year-old son. **AFFIRMED.**

Heidi Miller of The Law Office of Heidi Miller, Pleasantville, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Colin McCormack, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

A mother, Michelle, challenges a termination-of-parental-rights order that cut her legal ties with S.A., born in October 2023. She contends the juvenile court was mistaken in finding that her son could not be safely returned to her custody. She also asserts it would be in S.A.'s best interests to give her "a few more months to prove her sobriety and stability." Because the State offered clear and convincing evidence that S.A. would be at risk of harm if returned to his mother's custody, and that moving toward permanency now would serve his best interests, we affirm the termination order.[1]

## I. Facts and Prior Proceedings

Michelle gave birth to S.A. in a van after receiving no prenatal care in the final months of her pregnancy. The day after his birth, an ambulance brought him to the hospital with a fever, breathing issues, and trouble feeding. He tested positive for methamphetamine, amphetamine, and marijuana. Michelle did not give a credible explanation for the presence of drugs in the newborn's system. After his release from the hospital, the Iowa Department of Health and Human Services removed S.A. from his mother's custody and placed him with a foster family, where he has remained ever since. He was adjudicated as a child in need of assistance (CINA) in December 2023.

---

[1] We review these proceedings de novo. *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024). We "respect the juvenile court's factual findings, especially on credibility issues . . . ." *Id.* But "we examine the whole record, find our own facts, and adjudicate rights anew on issues properly before us." *Id.* (citation omitted).

Throughout the CINA case, Michelle resisted treatment for mental health and substance use.[2]  And she avoided drug testing.  She did engage in supervised visits with S.A. at Children and Families of Iowa.  She also completed SafeCare parenting classes but did not graduate from the home safety part of that program because her home was "not deemed safe for visitation."  The department expressed concerns about sanitation and the number of animals at the home.[3]  Given Michelle's prolonged instability, the State petitioned to terminate her parental rights in July 2024, when S.A. was eight months old.  The petition relied on Iowa Code section 232.116(1) (2024), paragraphs (h) and (*l*) as the grounds for termination.

The court scheduled the termination trial for August.  But Michelle grew emotional on the stand when asked about safety concerns in her home and needed a recess.  The court granted Michelle's motion to continue after her counsel relayed that she was "unable to regain her composure."  The court also approved counsel's request to withdraw because the attorney-client relationship was "irretrievably broken."

With new counsel, Michelle appeared for the continued trial in September.  She asked for S.A. to be returned to her custody or, otherwise, for six more months to work toward reunification.  The department social worker testified that S.A. could not be safely returned to his mother's custody.  The worker doubted Michelle's

---

[2] In her testimony, Michelle said that she didn't have transportation to attend the appointments.  The social worker testified that the department offered rides to treatment, but Michelle didn't accept the assistance.

[3] In May 2024, the service provider reported seeing six cats, one iguana, one bearded dragon, and one tarantula inside and three dogs outside.

decision-making skills and her "ability to reach out for supports that are needed."

Beyond that, she had not "addressed her mental health concerns or her substance

abuse concerns either." S.A.'s guardian ad litem also recommended termination,

while recognizing the mother's efforts:

> I have absolutely no doubt that she loves [S.A.] very deeply, and I do believe, that at least from her perspective, she has done the best she can with what she has.
> The problem is that [S.A.] is so young. He is doing very well in his current placement. And . . . as much as I would love to believe that [Michelle] would jump into services and be in a place in six months where reunification could occur, that would be pretty blind hope on my part at this point based on her history.

The court decided that the State proved the ground for termination under

paragraph (h) of section 232.116(1).[4] And the court denied Michelle's request for

more time, finding that termination is in S.A.'s best interests. Michelle appeals.[5]

## II.    Analysis

Termination cases follow a three-part analysis. First, the court must decide

whether a ground for termination exists under section 232.116(1). *In re P.L.*, 778

N.W.2d 33, 39 (Iowa 2010). Next, the court must decide whether termination is in

the child's best interests under section 232.116(2). *Id.* Finally, before terminating

parental rights, the court must consider if any factors in section 232.116(3) tilt

against termination. *Id.* In this appeal, we discuss only parts one and two because

those are the ones that the mother argues.[6]

---

[4] The court found that the State did not offer clear and convincing evidence under paragraph (*l*).
[5] The court also terminated the parental rights of S.A.'s father. Michelle testified that the father had never met S.A. The father did not appear for the hearing and does not appeal.
[6] Her petition on appeal mentions in passing that under section 232.116(3)(c) "the court does not need to terminate parental rights if there is clear and convincing

**A.  Statutory Ground for Termination**

We begin with Michelle's claim that the State did not prove the fourth element of section 232.116(1)(h).  She contends that S.A. could be returned to her custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing proof that the child cannot be returned to parental custody as provided in section 232.102); *see also In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (finding "at the present time" means the date of the termination hearing).

We can see that Michelle aspires to be a good parent, but she did not progress enough in the first year of S.A.'s life to make a return to her custody a realistic proposition.  Her own testimony casts doubt on her readiness.  She focused on asking for more time to address her mental health, substance use, and overall stability.  But, based on the reports and testimony of case workers, the juvenile court found that "her home is not even safe enough for supervised visits." On this record, termination was proper under paragraph (h).[7]

---

evidence that due to the closeness of the relationship between the parent and the child, it would be detrimental to the child's best interests to terminate parental rights."  But she does not argue that she proved that exception.  *See In re A.S.,* 906 N.W.2d 467, 475 (Iowa 2018) (holding parent resisting termination bears burden of proof under section 232.116(3)).  So we do not address it.

[7] Our case law offers two formulations for what it means when a child "cannot be returned" to parental custody as provided in section 232.102, which discusses transferring the child's custody if staying in the home would be "contrary to the welfare of the child."  Many cases cite *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992), which provides a child cannot be returned if it would expose him or her to "any harm amounting to a new child in need of assistance adjudication."  But our supreme court often describes the fourth element as the inability to "safely return" children to their parents' care.  *See, e.g.*, *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases).  Under either formulation, the State met its burden of proof here.

**B. Best Interests**

Michelle next argues that terminating her parental rights was not in S.A.'s best interests. In addressing that argument, we emphasize the child's safety; the best placement for furthering his long-term nurturing and growth; and his physical, mental, and emotional condition and needs. *See In re A.B.*, 957 N.W.2d 280, 300 (Iowa 2021) (discussing Iowa Code section 232.116(2)). We also consider S.A.'s integration into his foster family. *See* Iowa Code § 232.116(2)(b).

Michelle urges that terminating her parental rights will cause too much uncertainty in S.A.'s life. In her view, he would be better off waiting six months to see if she can achieve stability and sobriety.

Like the juvenile court, we find the State proved that moving expeditiously toward permanency is in S.A.'s best interests. S.A.'s safety and well-being are best assured by termination. Michelle has not effectively addressed her mental health, substance use, or the condition of her home. She testified that she has not attended S.A.'s medical appointments and did not know that he was participating in physical therapy. His needs are better addressed in his current foster home—a pre-adoptive placement.

**AFFIRMED.**